

# Helen F. Dalton and Associates, P.C.
## Attorneys at Law

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
T. 718.263.9591 ◆ F. 718.263.9598

September 16, 2020

**Via ECF**
The Honorable Judge Barbara C. Moses
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

        Re: **Clemente, et al. v. Midtown East NY LLC, et al.**
           **1:19-cv-02647-BCM**

Dear Judge Moses:

    Our office represents the Plaintiffs in the above-referenced matters and we submit this joint letter motion on behalf of both parties seeking approval of the Settlement Agreement (attached hereto as **Exhibit 1**) ("the Agreement") as fair and reasonable. The parties submit that the terms of the Agreement comport with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015) and provide analysis using the factors articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-336 as a basis for why the Court should approve the Agreement.

**History of Litigation and Settlement Negotiations**

    Plaintiffs Rogelio Villa Clemente ("R. Clemente"), Osvaldo Villa Clemente ("O. Clemente"), Jorge Raymundo Rivera ("Rivera"), Jose Alberto Astudillo ("Astudillo") and Isaul Villa Medel ("Medel") filed a Collective Action Complaint against Midtown East NY LLC d/b/a Bareburger ("Midtown East"), Michael Pitsinos ("Pitsinos") and George Hadjipanayi ("Hadjipanayi") (collectively, "the Franchisee Defendants") on March 25, 2019. In the Complaint [Dkt. No. 1], Plaintiffs alleged, *inter alia*, that they worked in excess of forty hours per week at Midtown East but were not paid overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). Shortly after the filing of the Complaint, Plaintiffs filed a Notice of Voluntary Dismissal pursuant to FRCP 41(a)(1)(A)(i) as to Midtown East as the corporate entity had filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York.

    On June 27, 2020, Plaintiffs filed an Amended Collective Action Complaint adding Defendants Bareburger Group, LLC, TIDM Corp., Euripides Pelakanos, Eftychios Pelekanos, and Spiridon Apostolatos (collectively, "the Franchisor Defendants") [Dkt. No. 37]. Plaintiffs alleged that both the Franchisor Defendants and Franchisee Defendants were joint employers under the

FLSA and NYLL and were jointly and severally liable for Plaintiffs' alleged damages under the FLSA and NYLL. On July 1, 2019, the Franchisee Defendants interposed an Answer, denying all material allegations made by Plaintiffs in the Amended Collective Action Complaint. On September 18, 2019, the parties filed a stipulation staying the claims of O. Clemente pursuant to an arbitration agreement between O. Clemente and the Defendants.

The parties attended a mediation through the SDNY Mediation Program on December 13, 2019. The mediation lasted approximately seven hours. Plaintiffs reached a settlement with the Franchisor Defendants but were unable to reach a settlement with the Franchisee Defendants. Plaintiffs settled with the Franchisor Defendants for the amount of $45,000.00. Plaintiffs and the Franchisor Defendants filed their Motion for Settlement Approval and Settlement Agreement on March 2, 2020 [Dkt. No. 84]. The Court issued an Order approving the Settlement Agreement on March 4, 2020 [Dkt. No. 85].

Plaintiff and Franchisee Defendants continued to discuss settlement during the remaining discovery period and in the post-discovery period, reaching a settlement after months of continued negotiations. These negotiations culminated with a settlement in principle on August 28, 2020 and followed by a formal settlement agreement memorializing the agreed-upon terms, which has been submitted for the Court's review and approval. The Franchisee Defendants have agreed to pay Plaintiffs a total of $30,000.00, including attorneys' fees (as addressed below), pursuant to a payment schedule.

**The Wolinsky Factors**

The parties analyze the fairness and reasonableness of the Agreement utilizing the factors articulated in *Wolinsky*:

1. **The Plaintiffs' range of possible recovery:**

**Plaintiffs' Position**

Plaintiffs' primary allegation was that Defendants did not compensate them for approximately ten hours of overtime worked per week due to Defendants' manipulation of the time tracking system. As such, Plaintiffs' damages were calculated by multiplying each Plaintiff's regular hourly rate by one-and-a-half (1.5) to determine each Plaintiff's overtime rate and then multiplying each Plaintiff's overtime rate by the ten hours of overtime per week for each week that Plaintiff was employed by the Defendants. Plaintiffs' counsel determined that this would entitle Plaintiffs to approximately $140,000.00 in unpaid wages if Plaintiffs were 100% successful on their claims. Plaintiffs could have also recovered additional penalties and damages depending on the verdict. There was also a possibility that the amount recovered – if any – could have been offset by the settlement amount received from the Franchisor Defendants. When accounting for the $45,000.00 previously received from the Franchisor Defendants, Plaintiffs believe that the total recovery of $75,000.00 falls squarely within the range of possible recovery.

**Defendants' Position**

The Franchisee Defendants dispute the allegations concerning the unpaid overtime and have produced contemporaneous time records from a computerized time clock that was maintained by the restaurants during the period. The documents and electronic records show that the Plaintiffs clocked in and out each workday, and their time was recorded down to the second. Plaintiffs were paid weekly for all hours, including any overtime, and their checkstubs report the weekly wages and all information required to inform them of the wages and hours worked. There is no evidence of alleged "manipulation" of time records, and there is no evidence that anyone ever complained to either the Franchisee Defendants or anyone else concerning inaccurate or potentially "manipulated" time tracking records. Plaintiffs' case, in this regard, is premised on unsubstantiated, self-serving claims of "manipulation", that the Franchisee Defendants are prepared to defend. Accordingly, Franchisee Defendants' position is that there is no merit to Plaintiffs' claims.

Furthermore, the Franchise Defendants have provided evidence which shows that the Franchisor Defendants were in exclusive control over the restaurant, including the employee schedules, hours and wages, for the period commencing November 2016 through the last date of Plaintiffs' employment. The Franchisee Defendants' position is that Plaintiffs settled with the Franchisor Defendants based on the assumption that the Franchisee Defendants were in control during that period. Thus, the only period during which the Franchisee controlled the restaurant was between July 2016, when the restaurant opened for business, and November 1, 2016, when the management was taken over by the franchisor defendants, who managed the employees. Thus, even if the Plaintiffs had meritorious claims, the total potential exposure to the Franchisee Defendants is no more than approximately $10,000-$15,000.

Accordingly, there is a bona fide dispute as to all of the allegations made by the Plaintiffs.

The foregoing notwithstanding, the Franchisee Defendants recognize that the cost of defending the Plaintiffs claims, conducting a trial and pursuing and/or defending potential appeals, would likely be in excess of $10,000-$20,000, and given the unpredictability of litigation and potential risk of an adverse outcome, the Franchisee Defendants have decided it is in the best interests of all parties to settle this dispute for the settlement amount of $30,000.00. The settlement amount falls within the range of possible recoveries, i.e., $10,000 to $95,000 (representing the $140,000 claimed less payments made by the franchisor defendants). As such, the settlement amount is fair and reasonable in light of the defenses, including the documentary evidence of time records and documents showing that the franchisee defendants lacked control after November 2016.

**2. The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":**

Although the discovery had closed in this matter, the settlement still enables the parties to avoid the anticipated burdens and expenses of litigation. Had the parties not reached a settlement, both sides faced significant time and expenses preparing all of the necessary pre-trial documents

required by the Court. The parties also anticipated significant time and expenses dedicated to conducting a trial that may have lasted three or four days.

Each Plaintiff would have been required to take multiple days off from his current job and Plaintiffs would have incurred expenses preparing exhibits for trial and hiring court-licensed translators for each Plaintiff throughout the trial.

### 3. The seriousness of litigation risks faced by the parties:

Both parties faced significant risks had they proceeded to trial in this matter.

Although Plaintiffs were confident that they could succeed on all their claims, Plaintiffs recognized the attendant risks of not prevailing at trial and not receiving any recovery. Plaintiffs also could have recovered less than agreed-upon settlement at trial. The seriousness of this risk favored the settlement for Plaintiffs.

Defendants also faced the risk of losing at trial and not only having to pay any potential unpaid wages to Plaintiffs but also Plaintiffs' counsel's reasonable attorneys fees.

### 4. Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":

The parties engaged in extensive back-and-forth settlement talks for approximately eight months beginning with a full-day mediation session in December 2019 before a court-appointed mediation, which laid the groundwork for the terms of the settlement.

Plaintiffs are represented by counsel who specialize in FLSA and NYLL matters and have settled hundreds of wage-and-hour cases in both New York state and federal courts. Defendants are also represented by counsel who specialize in FLSA and NYLL matters.

The Agreement was the product of extensive arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts. The Agreement does not contain any confidentiality clauses, non-disparagement agreements, or releases of claims unrelated to the wage-and-hour claims asserted in this matter and comports with *Cheeks* and Second Circuit case law.

### 5. The possibility of fraud of collusion:

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

### 6. Other Considerations:

Plaintiffs' decision to settle this matter also factored in other considerations. One of the most important considerations was whether Plaintiffs would be able to collect on judgments against

Defendants, even if they were successful at trial. First, the corporate entity sued by Plaintiffs is in bankruptcy. Plaintiffs conducted a thorough asset search on the remaining Defendants. This issue was thoroughly addressed at the parties' mediation and Plaintiffs' counsel had an opportunity to ask Defendants about their finances, ongoing businesses, debts, and other active litigations. During the parties' negotiations, this issue was continually raised by Defendants and given that neither individual Defendant owned or operated an active business, Plaintiffs believed it was in their best interest to accept a guaranteed payment through a Court-approved settlement in the near future. These concerns were amplified by the current Covid-19 pandemic and its potential effect on Defendants' ability to pay should Plaintiffs have obtained a larger judgment at trial.

**Attorneys' Fees and Distribution to Plaintiffs**

Plaintiffs and the Franchisee Defendants agreed to a global settlement of $30,000.00. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $20,000.00. Each Plaintiff will receive an amount proportional to Plaintiffs' counsel's individualized calculations of damages, which factor in the length of each Plaintiff's employment and the rate of pay received by each Plaintiff. Each Plaintiff's share of the settlement proceeds also take into account the records provided by Defendants and each Plaintiff's potential risk of recovery at trial.

R. Clemente will recover $5,689.00, Rivera will recover $4,997.00, Astudillo will recover $4,657.00 and Medel will recover $4,657.00. Each Plaintiff will receive the same proportional amount of the settlement proceeds as they received in the agreement with the Franchisor Defendants.

Plaintiffs' counsel does not seek reimbursement for any expenses associated with this matter as they have already been paid through the settlement agreement with the Franchisor Defendants. As such, Plaintiffs' counsel only requests its attorneys' fees of $10,000.00, or one-third of the settlement amount.

Plaintiffs' attorneys and their clients have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.,* 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016). Plaintiffs' retainer agreements are attached hereto as **Exhibit 2**.

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel has litigated the matter for a year and a half and has negotiated settlement with two separate sets of Defendants. The matter entailed extensive paper discovery, requiring Plaintiffs' counsel to review hundreds of pages of records provided by Defendants. Plaintiffs' counsel attended numerous conferences before the court in addition to a full-day mediation. Lastly, after the close of discovery, Plaintiffs' counsel began preparing and filing pre-trial documents in

anticipation of trial. Plaintiffs' counsel has zealously advocated for their clients throughout the litigation and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

As Your Honor has also requested Plaintiffs' counsel's contemporaneous billing records, please see the records and attorney qualifications attached hereto as **Exhibit 3**. As explained in greater detail in the attached billing records, Plaintiffs' attorneys' fees as calculated using the lodestar method are **$25,197.00**. Plaintiffs' counsel spent a combined **65.7** attorney hours and **25.2** paralegal hours working on this matter from intake of Plaintiffs through finalizing the Agreement for the Court's review and approval. Plaintiffs' counsel believes that the extensive work performed in this matter also supports the requested attorneys' fee award of one-third of the settlement.

## Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of eight months of negotiations and the terms of the Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Agreement. We thank Your Honor for her consideration and remain available to provide any additional information.

Respectfully submitted,

_/s/_____
Roman Avshalumov, Esq.
James O'Donnell, Esq.
*Attorneys for Plaintiffs*