USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/06/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROGELIO VILLA CLEMENTE, et al.,

    Plaintiff,

-against-

MIDTOWN EAST NY LLC, et al.,

    Defendants.

19-CV-2647 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge**.

  The Court has received and reviewed plaintiffs' letter-application dated September 16, 2020 (Sept. 16 Ltr.) (Dkt. No. 107), submitted "on behalf of both [sic] parties," *id*. at 1, which seeks approval of the parties' proposed Settlement Agreement and Release (Agreement) (Dkt. No. 107-1) pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). For the reasons that follow, the settlement will be approved and the case will be dismissed.

## Background

  This is a wage and hour case brought pursuant to, *inter alia*, the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*. Plaintiffs Rogelio Villa Clemente, Jorge Raymundo Rivera, Jose Alberto Astudillo, and Isaul Villa Medel, who allege primarily that they were not paid time and a half for their overtime hours, previously settled their wage claims against defendants Bareburger Group LLC, TIDM Corp., Euripides Pelekanos, Eftychios Pelekanos, and Spiridon Apostolatos (the Franchisor Defendants) for a total of $45,000, out of which plaintiffs' counsel received $877 in expense reimbursement and $14,707 (1/3 of the remaining settlement funds) in fees. (Dkt. No. 84.) The Hon. Lorna Schofield, United States District Judge, approved the settlement with the Franchisor Defendants pursuant to *Cheeks* on March 4, 2020. (Dkt. No. 85.) [1] Plaintiffs' remaining

---

[1] Prior to that settlement, the parties stipulated to stay the claims of a fifth plaintiff, Osvaldo Villa Clemente, and to compel arbitration of his claims pursuant to his "mandatory arbitration agreement." (Dkt. No. 60.) When Judge Schofield approved the initial settlement agreement, she

claims, against defendants Michael Pitsinos and George Hadjipanayi (the Franchisee Defendants), were set for trial before Judge Schofield on July 6, 2020. (Dkt. No. 90.)

On June 8, 2020, the parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). (Dkt. No. 94.) Thereafter, plaintiff Osvaldo Villa Clemente dismissed his claims against the Franchisee Defendants without prejudice (Dkt. No. 99), and I scheduled the case for a bench trial to begin September 14, 2020. (Dkt. No. 96.)

By letter dated August 27, 2020 (Dkt. No. 101), plaintiffs notified the Court that they had reached an agreement in principle to settle all remaining claims among all remaining parties, and on September 16, 2020, they submitted their fully-executed Agreement, along with copies of the retainer agreement (Retainer) between plaintiffs and their counsel, Helen F. Dalton and Associates, P.C. (the Firm) (Dkt. No. 107-2), timesheets reflecting work performed by the Firm on this case (Dkt. No. 107-3, at ECF pages 1-2), and a short description of plaintiffs' counsel's qualifications. (Dkt. No. 107-3, at ECF page 3.)

## The Agreement

Plaintiffs allege they worked for various periods of time from 2016 through 2019 at Midtown East LLC d/b/a Bareburger (Midtown East), which operated a restaurant on East 52nd Street in New York City. Amend. Compl. (Dkt. No. 37) ¶¶ 8-12.[2] Clemente was a food preparer, griller, cook, and kitchen worker. *Id.* ¶ 64. He alleges that he worked approximately 70 hours per week but was not paid time and a half for his overtime hours. *Id.* ¶ 67. Rivera was a food preparer, dishwasher, cleaner, and kitchen worker; he alleges that he worked approximately 50 hours per

---

dismissed the four settling plaintiffs' claims against the Franchisor Defendants with prejudice, and dismissed Osvaldo Villa Clemente's claims against the Franchisor Defendants without prejudice. (Dkt. No. 85.)

[2] On March 17, 2019, Midtown East filed for bankruptcy protection. (Dkt. No. 10). On May 3, 2019, plaintiffs dismissed their claims against Midtown East without prejudice. (Dkt. No. 16.)

week but was not paid time and a half for his overtime hours. *Id*. ¶¶ 76, 78. Astudillo was a food preparer and cook, and performed other miscellaneous duties; he worked an average of 72 hours per week but was not paid time and a half for his overtime hours. *Id*. ¶¶ 81, 84. Medel's duties were as food preparer, griller, cook, and kitchen worker; he worked approximately 65 hours per week but was not paid time and a half for his overtime hours. *Id*. ¶¶ 87, 90.

Under the Agreement, defendant Pitsinos will pay $15,000, and defendant Hadjipanayi will pay another $15,000, for a total of $30,000, to settle all of plaintiffs' claims against them. Ag. ¶ 1(A)-(B). Each defendant will make an initial payment of $5000, followed by ten monthly payments of $1000 apiece. *Id*. All funds will be paid to the Firm, which will keep $10,000 for its fee, leaving $20,000 to be distributed among the four plaintiffs in proportion to their counsel's calculation of their potential damages: $5689 to Clemente, $4997 to Rivera, and $4657 each to Astudillo and Medel. Sept. 16 Ltr. at 5.[3] As security for the installment payments, each defendant has signed a Confession of Judgment in the amount of $30,000, less any payments previously made "in accordance with the amicable resolution" of this action. Ag. Exs. A-B.[4] In the event either Pitsinos or Hadjipanayi is in default of his payment obligations and fails to cure the default

---

[3] Neither the proposed fee award nor the allocation among the plaintiffs appears in the Agreement. These matters are set forth only in the September 16 Letter. The Court presumes – and finds the settlement fair on the understanding that – counsel have thoroughly discussed both issues with their clients and that each client understands both how much he will personally receive and how much his co-plaintiffs and attorneys will receive. It is the better practice, for obvious reasons, to spell out these provisions in the settlement agreement itself, for review and signature by each plaintiff.

[4] As written, the Confessions of Judgment could be read to give the settling Franchisee Defendants credit for payments previously made by the Franchisor Defendants. The Court presumes – and finds the settlement fair on the understanding that – that this was not the parties' intent, particularly since the Agreement states, more clearly, that judgment may be entered pursuant to the Confessions of Judgment for $30,000 "less any payments made *pursuant to this Agreement*." Ag. ¶ 2(a) (emphasis added).

within seven days after receiving notice of the same from plaintiffs, then plaintiffs may file the Confession of Judgment executed by the defaulting defendant. Ag. ¶ 2(b).

The Agreement contains mutual (although not entirely symmetrical) releases: plaintiffs will release the Franchisee Defendants and their successors and assigns of and from all claims "alleged in the Complaint" in this action, while the Franchisee Defendants release plaintiffs of and from any claims "that could have arisen out of their employment." Ag. ¶ 5.[5] There is no confidentiality clause or other restriction on the parties' ability to speak about the case.

## **Analysis**

The Agreement states that it became effective "immediately upon execution." *Id*. ¶ 10. In fact, under *Cheeks*, plaintiffs cannot effectively release their claims against the Franchisee Defendants absent "the approval of the district court or the Department of Labor." 796 F.3d at 200. This Court must therefore determine whether the terms of the Agreement, including the proposed allocation of fees to plaintiffs' counsel, are "fair and reasonable." *Id*. at 201; *see also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) ("if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs"). In making that determination, the district court weighs the proposed fee in light of the "degree of success obtained." *Fisher*, 948 F.2d at 606 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

In this case, plaintiffs estimate their recoverable damages at "approximately $140,000 in unpaid wages if plaintiffs were 100% successful on their claims," together with liquidated damages and "additional penalties . . . depending on the verdict." Sept. 16 Ltr. at 2. Of that sum, they have

---

[5] As written, ¶ 5 also releases plaintiffs' claims against the Franchisee Defendants' "parent corporations, stockholders, subsidiaries, affiliates, [and] divisions," as well as their respective officers, owners, directors, employees, trustees, and agents. However, since both Franchisee Defendants are individuals – and therefore do not have any parent corporations, stockholders, subsidiaries, or affiliates – this language has no effect on the scope of the release.

4

already recovered $45,000 from the Franchisor Defendants, such that their aggregate settlement recovery, assuming that the Franchisee Defendants honor their installment payment schedule, will be $75,000. Plaintiffs describe that sum as "squarely within the range of possible recovery" in light of various risk factors including, *inter alia*, significant factual disputes as to the hours worked by the plaintiffs and the accuracy of defendants' computerized time records; the Franchisee Defendants' claim that they were only in "control" of the restaurant for a three-month period before the Franchisor Defendants took it over; and questions about collectability. *Id.* at 2-4.

The Court agrees that the economic terms of the Agreement are fair and reasonable as required by *Cheeks*, 796 F.3d at 199. The proposed fee award is also reasonable. Plaintiff's attorneys will receive $10,000, or one-third of the total payment by the Franchisee Defendants, which is consistent with the Firm's Retainer,[6] and in line with substantial precedent in this District. *See*, *e.g.*, *Martinez v. SJG Foods LLC*, 2017 WL 4676828, at *2 (S.D.N.Y. Oct. 16, 2017) (quoting *Meza v. 317 Amsterdam Corp.*, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) ("When using a percentage of the fund approach, 'courts regularly approve attorney's fees of one-third of the

---

[6] Paragraph 2 of the Retainer authorizes the Firm to "retain out of the monies that may come into their hands, whether recovered by settlement, judgment, or otherwise, 33 & 1/3 (1/3) of the gross recovery after deducting costs and expenses associated with prosecuting this case." In this instance, plaintiffs explain, counsel do not seek any expense reimbursement because "they have already been paid through the settlement agreement with the Franchisor Defendants." Sept. 16 Ltr. at 5. The Court notes, for the Firm's guidance going forward, that ¶ 1 of the Retainer, which purportedly prohibits the client from "settl[ing] this action in any manner without [the Firm's] written consent," is unethical and unenforceable. *See* N.Y. Rules of Prof. Conduct, Rule 1.2(a) ("A lawyer shall abide by a client's decision whether to settle a matter."); N.Y. Comp. Codes R. & Regs. tit. 22, § 1210.1 (requiring every New York attorney to post a Statement of Client's Rights assuring clients, among other things, that "the decision of whether to settle your matter is yours and not your lawyer's"). The Court has no reason to believe that ¶ 1 improperly influenced the settlement process in this case, but brings the matter to counsel's attention in accordance with the Code of Conduct for U.S. Judges, Canon 3(B)(6) (Judicial Conf. eff. March 12, 2019), *available at* https://www.uscourts.gov/judges-judgeships/code-conduct-united-states-judges.

settlement amount in FLSA cases.'").[7] Moreover, counsel's total fee will be $24,707 ($14,707 approved on March 4, 2020, plus $10,000 allocated from the present settlement) which is roughly one-third of the total settlement funds from all defendants and slightly less than counsel's lodestar for the case, which, according to the timesheets submitted with the settlement materials, is $25,197.50. *See* Sept. 16 Ltr. Ex. 3.[8] The timesheets thus provide a helpful cross-check which further supports the fairness of the proposed fee award.

Although the Agreement and the September 16 Letter do not expressly discuss the priority of payments between plaintiffs and their counsel over time, the Court presumes – and finds the fee award fair on the understanding that – counsel will not retain more than one-third of any one installment payment made by the Franchisee Defendants. The risk of nonpayment will thus be borne equally by counsel and their clients.

## Conclusion

Because the terms of the Agreement, as discussed above, are fair and reasonable, the proposed settlement is **APPROVED**. Plaintiffs' counsel may retain one-third of each settlement payment made by the Franchisee Defendants, up to total of $10,000.

It is hereby **ORDERED** that this action is **DISMISSED** with prejudice and without costs. The Court will retain jurisdiction for the limited purpose of enforcing the Agreement if necessary.

---

[7] The Second Circuit held in *Fisher* held that there is no "proportionality limit on recoverable attorneys' fees" in an FLSA case, and thus that the courts cannot place an automatic cap on such fees at 33%. 948 F.3d at 602-05. In this case, however, plaintiffs have affirmatively requested a fee award equivalent to one third of the settlement consideration, which presents no comparable difficulties.

[8] Counsel recorded a total of 90.9 hours spent on this action by attorneys and paralegals at rates ranging from $425 per hour for the Firm's senior managing attorney Roman Ayshalumov, who has been practicing law for 12 years, to $75 per hour for the Firm's bilingual paralegal. Sept. 16 Ltr. Ex. 3.

The Clerk of the Court is respectfully directed to close the case.

Dated: New York, New York
October 6, 2020

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**

7